In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00389-CR


____________________



DAVID KENT ORTIZ, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 258th District Court


Polk County, Texas


Trial Cause No. 19,855






MEMORANDUM OPINION


 A jury convicted appellant David Kent Ortiz of indecency with a child and assessed
punishment at eighteen years of confinement and a $10,000 fine. In his sole appellate
issue, Ortiz contends the evidence was legally insufficient to support his conviction. We
affirm.

The Evidence


 The eight-year-old victim, A.H., testified that her parents were separated. While
A.H. was staying with her mother, A.H. met Ortiz, who sometimes stayed overnight at
A.H.'s mother's home. A.H. testified that Ortiz sometimes brought his children with him.
According to A.H., Ortiz slept in her mother's bedroom, Ortiz's children slept on the
couch, and A.H. slept on a mattress on the living room floor. A.H. testified that on one
occasion when she had spent the night at her mother's house, Ortiz entered the living room
the next morning and sat down on the floor beside the mattress. A.H. testified that Ortiz
then touched her "[p]rivate" underneath her panties and moved his hand around, and she
identified the vaginal area on a diagram. According to A.H., the other three children were
still asleep when Ortiz touched her. After Ortiz left the room, A.H. went to find her
mother. Although A.H.'s mother asked A.H. if something was wrong, she did not tell her
what had happened at that time. A.H. told her father what had happened later that day
when she went home. A.H. also testified that on a prior occasion in a hotel swimming
pool, Ortiz tried to touch her private, but she moved and prevented him from doing so. 

 A.H.'s father, C.H., testified that when A.H. came home from her mother's
residence on the day in question, A.H. was quiet, and A.H. eventually "came out and told
me she needed to talk to me about something." A.H. told C.H. that Ortiz had touched her
vaginal area. C.H. contacted the sheriff's department and informed A.H.'s mother. C.H.
testified that a Child Protective Services caseworker subsequently interviewed A.H. (1) A.H.'s mother, T.H., testified that A.H. stayed with her approximately three nights
per week. T.H. testified that during a trip with Ortiz and the children, A.H. told her that
Ortiz had tried to touch her inappropriately in the swimming pool. According to T.H.,
A.H. had always been nervous around Ortiz, and T.H. did not leave A.H. alone with Ortiz
after the swimming pool incident. On the morning of the day in question, T.H. went
outside to clean out her van. While she was outside, T.H. heard Ortiz walking around
inside. A.H. came outside, and when T.H. asked A.H. if she was all right, A.H. said she
was "okay." T.H. testified that she was concerned that something had happened to A.H. 
A.H. went home to her father's house later that day. T.H. testified that C.H. and A.H.
later came back to T.H.'s house, and T.H. learned what had happened. T.H. testified that
Ortiz called later that day, and when she asked him why he did what he did, he said "the
devil made him do it." T.H. testified that Ortiz admitted that he touched A.H., but "[h]e
said he didn't bring pain on her. It didn't hurt when he touched her." 

 Lieutenant Craig Finegan of the Polk County Sheriff's Office testified that he
became involved in the investigation of Ortiz after the sheriff's office received a report
regarding an allegation of indecency with a child. Lieutenant Finegan took a final
statement from A.H. a few weeks after the incident. Lieutenant Finegan testified that the
sheriff's department decided not to pursue a sexual assault examination because the case
involved touching rather than penetration, and an examination would have been invasive
and traumatic for a child. Lieutenant Finegan testified that he attempted to call Ortiz
during the investigation, but Ortiz hung up on him, and Ortiz refused to answer the phone
when Lieutenant Finegan attempted to call again. Lieutenant Finegan subsequently
obtained a warrant to arrest Ortiz. The State rested after Lieutenant Finegan's testimony. 

 Ortiz's seventeen-year-old son, M.O., testified that he occasionally spent the night
with his father at T.H.'s house. M.O. testified that on the date in question, he, his two
sisters, three other children, and Ortiz spent the night at T.H.'s home. M.O. testified that
he slept on the couch in the living room. According to M.O., nothing unusual happened
that night or the following morning, and no one was acting unusual. M.O. admitted that
he did not know what transpired while he was asleep. Ortiz's nine-year-old daughter,
E.O., testified that she slept on the floor with A.H., and she did not recall her father
entering the room that night or that morning. E.O. testified that she is a fairly sound
sleeper. Ortiz's twelve-year-old daughter, S.O., likewise testified that she did not recall
her father entering the living room, and she did not see anything unusual that night or that
morning. 

 Ortiz testified that he had a romantic relationship with T.H., and he sometimes
spent the night at her home. Ortiz denied admitting to T.H. that he had done anything
improper to A.H. Ortiz testified that he and T.H. did not sleep on the night in question
because they were doing drugs. Ortiz testified that when he went into the living room that
morning, he did not notice anything unusual about the children or T.H. Ortiz denied
touching A.H. inappropriately, and he testified that the allegations against him were
untrue. Ortiz testified that A.H. and T.H. were lying. Ortiz also denied trying to touch
A.H. inappropriately in the swimming pool. Ortiz testified that he "might have" hung up
on Lieutenant Finegan because he "just didn't want to deal with it." Ortiz admitted that
although he told Lieutenant Finegan that he would talk to him, he never did so. 

Ortiz's Issue


 In his sole issue on appeal, Ortiz argues the evidence was legally insufficient to
support his conviction. When reviewing the legal sufficiency of the evidence, we must
view the evidence in the light most favorable to the verdict and determine whether any
rational factfinder could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d
560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004). The jury is the
ultimate authority on the credibility of witnesses and the weight to be given their testimony. 
See Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). When the victim of
a sexual offense is seventeen years old or younger, a conviction under chapter 21 of the Penal
Code is supportable on the victim's uncorroborated testimony. Tex. Code Crim. Proc. Ann.
art. 38.07(a), (b)(1) (Vernon 2005).

 A.H. testified that Ortiz touched her vaginal area underneath her panties. Viewing the
record in the light most favorable to the verdict, a rational jury could have concluded beyond
a reasonable doubt that Ortiz was guilty of indecency with a child. See Tex. Pen. Code Ann.
§ 21.11(a)(1) (Vernon 2003); Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1). 
Accordingly, we overrule Ortiz's sole issue and affirm the trial court's judgment.

 AFFIRMED.

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on August 3, 2009

Opinion Delivered August 26, 2009

Do not publish


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. Shawna Farrar, an investigator with the Texas Department of Family and Protective
Services, testified that she interviewed A.H.